UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BARBARA JEAN DI GIOIA,

     Plaintiff,

v.                                                    Case No.:  2:21-cv-262-SPC-MRM

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Barbara Jean Di Gioia filed a Complaint on March 26, 2021.  (Doc.

1).  Plaintiff seeks judicial review of the final decision of the Commissioner of the

Social Security Administration ("SSA") denying her claim for a period of disability

and disability insurance benefits.  The Commissioner filed the transcript of the

administrative proceedings (hereinafter referred to as "Tr." followed by the

appropriate page number), and the parties filed a joint memorandum detailing their

respective positions.  (Doc. 15).  For the reasons set forth herein, the Undersigned

recommends that the decision of the Commissioner be **AFFIRMED** pursuant to

§ 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.    Social Security Act Eligibility

The law defines disability as the inability to do any substantial gainful activity

by reason of any medically determinable physical or mental impairment that can be

expected to result in death or that has lasted or can be expected to last for a

continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work or any other substantial gainful activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511.

## II.      Procedural History

Plaintiff applied for a period of disability and disability insurance benefits on March 6, 2018, alleging a disability onset date of April 21, 2017.  (Tr. at 13).[1] Plaintiff's claim was initially denied on June 25, 2018, and again upon reconsideration on December 6, 2018.  (*Id.*).  On January 23, 2019, Plaintiff filed a written request for hearing, which was held via telephone before Administrative Law Judge ("ALJ") Raymond Rodgers on May 8, 2020.  (*Id.* at 13, 27-60).  The ALJ issued an unfavorable decision on May 22, 2020.  (*Id.* at 13-21).  The Appeals Council subsequently denied Plaintiff's request for review on January 26, 2021.  (*Id.* at 1-3).  Plaintiff filed her Complaint in this Court on March 26, 2021.  (Doc. 1).  The case is ripe for review.

---

[1]  The SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (Jan. 18, 2017).  The new regulations apply in Plaintiff's case because Plaintiff filed her claim after March 27, 2017.

### III.        Summary of the Administrative Law Judge's Decision

An ALJ must follow a five-step sequential evaluation process to determine whether a claimant has proven she is disabled.  *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).  An ALJ must determine whether the claimant:  (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform her past relevant work; and (5) can perform other work of the sort found in the national economy.  *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004).  The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five.  *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ determined that Plaintiff last met the insured status requirements of the Social Security Act on March 31, 2019.  (Tr. at 15).  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity from her alleged onset date, April 21, 2017, through her date last insured, March 31, 2019.  (*Id.*).  At step two, the ALJ found that Plaintiff had the following severe impairments through her date last insured:  "degenerative disc disease of the lumbar spine; osteoarthritis of the right hip and right knee; headaches; and asthma (20 [C.F.R. §] 404.1520(c))."  (*Id.*).  The ALJ, at step three, determined that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed

impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1 (20 [C.F.R. §§]

404.1520(d), 404.1525, and 404.1526)." (*Id.* at 17).

At step four, the ALJ found that Plaintiff had the residual functional capacity

("RFC") to:

> lift/carry 10 pounds occasionally and 5 pounds frequently;
> sit for six hours in an eight hour workday; stand and/or
> walk for two hours in an eight hour workday; no operation
> of foot controls; must be allowed to change positions after
> 30 minutes; occasional climbing of ramps or stairs but never
> climb ladders, ropes, or scaffolds; occasional balancing,
> stooping, kneeling and crouching; no crawling; no exposure
> to very loud noise as defined by the SCO code; no exposure
> to extreme bright lighting like headlight stage lights, bright
> inspection lights, but normal office and home light
> acceptable; must avoid concentrated exposure to
> pulmonary irritants such as fumes, odors, dust, gases; and
> no exposure to hazardous machinery.

(*Id.*).  The ALJ also determined that Plaintiff "would be capable of returning to her

past relevant work as that of a research and development director," (*Dictionary of

Occupational Titles*, ("DOT")# 189.117-014, 1991 WL 671485, sedentary, SVP 8), as

it is generally performed in the national economy.  (*Id.* at 21).  Additionally, the ALJ

found that "[t]his work did not require the performance of work-related activities

precluded by [Plaintiff's RFC] (20 [C.F.R. §] 404.1565)."  (*Id.*).  Accordingly, the

ALJ found that "[t]he claimant was not under a disability, as defined in the Social

Security Act, at any time from April 21, 2017, the alleged onset date, through March

31, 2019, the date last insured (20 [C.F.R. §] 404.1520(f))."  (*Id.*).

IV.     **Standard of Review**

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

**V.**      **Analysis**

On appeal, Plaintiff raises two issues.  As stated by Plaintiff, the issues are:

1.      Whether the ALJ properly evaluated the impact of Plaintiff's mental impairments on her ability to work; and

2.      Whether remand is required because the appointment of Andrew Saul as a single commissioner of SSA who was removable only for cause and would serve a longer term than that of the president violated separation of powers and renders the decision in this case, offered by an ALJ whose authority derived solely from Mr. Saul, constitutionally defective.

(Doc. 15 at 6, 23).  The Undersigned finds it appropriate to address the issues in a more logical order.  Accordingly, the Undersigned will first address the parties' second issue – whether 42 U.S.C. § 902(a)(3) is unconstitutional and necessitates a rehearing of Plaintiff's case.  Next, the Undersigned will consider the parties' first issue – whether the ALJ erred in his evaluation of Plaintiff's mental impairments at step four of the sequential evaluation.

**A.      Whether 42 U.S.C. § 902(a)(3) Necessitates a Rehearing.**

Removal of the Commissioner of Social Security is governed by 42 U.S.C. § 902(a)(3), (the "removal provision").  Under § 902(a)(3), the SSA's Commissioner is appointed to a six-year term and may not be removed from office by the President without a showing of cause.  *See* 42 U.S.C. § 902(a)(3).

Plaintiff argues that the § 902(a)(3) removal provision provides unconstitutional tenure protection to the Commissioner of the SSA, violates the separation of powers, and, therefore, the SSA's structure is constitutionally invalid. (*See* Doc. 15 at 23-27 (citing 42 U.S.C. § 902(a)(3); *Seila L. LLC v. Consumer Fin. Prot.*

*Bureau*, 140 S. Ct. 2183 (2020))).  To that end, Plaintiff impliedly asserts that

Commissioner Andrew Saul was subject to the removal provision's allegedly

unconstitutional tenure protection and, thus, any actions taken by him or pursuant to

his authority were unconstitutional.  (*See id.* at 24).  For example, Plaintiff argues

that, because Commissioner Saul delegated his authority to the ALJ who issued a

decision in Plaintiff's case, her claim was adjudicated by an ALJ who "had no lawful

authority to do so."  (*See id.* at 24, 27 (citations omitted)).  Plaintiff also asserts that

her claim was decided under "a presumptively inaccurate legal standard" because

Commissioner Saul issued regulations under which Plaintiff's application was

decided.  (*Id.* at 24-27).

The Commissioner "*agree[s]* that 42 U.S.C. § 902(a)(3) violates the separation

of powers to the extent it is construed as limiting the President's authority to remove

the Commissioner without cause," (*id.* at 27 (emphasis added) (citing

Constitutionality of the Commissioner of Social Security's Tenure Protection, 45 Op.

O.L.C. ----, 2021 WL 2981542 (July 8, 2021))), but disagrees that the removal

provision necessitates a remand of Plaintiff's case, (*id.* at 28 (citation omitted)).

Specifically, the Commissioner contends that Plaintiff cannot show a nexus between

42 U.S.C. § 902(a)(3)'s removal provision and any alleged harm suffered by Plaintiff.

(*See id.* at 27-36 (citing *Collins v. Yellen*, 141 S. Ct. 1761 (2021); *Lucia v. S.E.C.*, 138 S.

Ct. 2044 (2018); *Decker Coal Co. v. Pehringer*, 8 F.4th 1123 (9th Cir. 2021))).

The Commissioner raises two arguments in support of this contention.  First,

the Commissioner argues that because ALJ Raymond Rodgers served under a

ratification of his appointment by former Acting Commissioner Nancy Berryhill, there was no connection between ALJ Rodgers' decision and the removal provision. (*See id.* at 29-32 (citations omitted)).  Because Acting Commissioner Berryhill was not subject to any tenure protection under 42 U.S.C. § 902(a)(3), the Commissioner asserts that any potential nexus between the removal provision and the decision in Plaintiff's case was severed.  (*See id.*).  Second, even if Plaintiff's case were decided under the authority of a Commissioner subject to the removal provision, the Commissioner argues that Plaintiff "cannot show that the removal restriction 'inflict[ed] compensable harm' on her."  (*Id.* at 32-36 (alteration in original) (citing *Collins*, 141 S. Ct. at 1789)).

The Commissioner next argues that Plaintiff's rehearing request should be denied under the harmless error doctrine, (*id.* at 37-38 (citations omitted)), the *de facto* officer doctrine, (*id.* at 38 (citations omitted)), the rule of necessity (*id.* at 39 (citations omitted)), and broad prudential considerations, (*id.* at 39-41 (citations omitted)).

On June 29, 2020, in *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020), the United States Supreme Court held that a "for-cause" removal restriction on the President's executive power to remove the Consumer Financial Protection Bureau's ("CFPB") director violated constitutional separation of powers, but that the removal provision was severable such that the other provisions relating to the CFPB's structure and duties "remained fully operative without the offending tenure restriction."  *Seila L. LLC*, 140 S. Ct. at 2209 (citing *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 509 (2010)).

Thereafter, on June 23, 2021, in *Collins v. Yellen*, 141 S. Ct. 1761 (2021), the United States Supreme Court held that the Federal Housing Finance Agency ("FHFA") director's statutory for-cause removal protection was similarly unconstitutional. *Collins*, 141 S. Ct. at 1783. The Court also distinguished the unconstitutional removal provision in *Collins* from similar appointment provisions, *see, e.g.*, *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018), noting that:

> All the officers who headed the FHFA during the time in question were properly *appointed*. Although the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the FHFA [challenged on appeal] as void.

*Id.* at 1787 (emphasis in original). The Court did not, however, rule out the potential that an unconstitutional removal provision could "inflict compensable harm." *Id.* at 1788-89. To that point, the *Collins* Court listed examples of how compensable harms might be identified, stating:

> Suppose, for example, that the President had attempted to remove a Director but was prevented from doing so by a lower court decision holding that he did not have "cause" for removal. Or suppose that the President had made a public statement expressing displeasure with actions taken by a Director and had asserted that he would remove the Director if the statute did not stand in the way. In those situations, the statutory provision would clearly cause harm.

*Id.*

In this matter, the Commissioner agrees with Plaintiff that 42 U.S.C. § 902(a)(3) is unconstitutional because it violates the separation of powers. (Doc. 15 at 27 (citing Constitutionality of the Commissioner of Social Security's Tenure Protection, 45 Op. O.L.C. ----, 2021 WL 2981542 (July 8, 2021))). However, despite the parties' agreement, the Undersigned finds that the Court need not determine the constitutionality of 42 U.S.C. § 902(a)(3)'s removal provision. In short, even assuming *arguendo* that the removal provision is unconstitutional, it would not necessitate a rehearing of Plaintiff's claim because the provision is severable and there is no evidence to suggest a nexus between the removal provision and a compensable harm to Plaintiff. Accordingly, the Undersigned assesses whether the removal provision necessitates a rehearing of Plaintiff's claim, assuming *arguendo* that the provision is unconstitutional.

Plaintiff essentially contends that the allegedly unconstitutional nature of section 902(a)(3) automatically voids the ALJ's decision in this case. (*See* Doc. 15 at 23-27). On the other hand, the Commissioner has raised many arguments, none of which Plaintiff has responded to, as to why Plaintiff's rehearing request should be denied. (*See id.* at 27-41).

Here, the Undersigned agrees with the Commissioner's arguments and finds a rehearing is not required based solely on the allegedly unconstitutional removal provision for two reasons: (1) the removal provision is severable from the remainder of the Social Security Act; and (2) Plaintiff has failed to show how the allegedly unconstitutional removal provision harmed her.

The Court in *Seila Law* noted that "one section of a statute may be repugnant to the Constitution without rendering the whole act void."  *See Seila L. LLC*, 140 S. Ct. at 2208.  Based on this principle, the Undersigned is not persuaded by Plaintiff's broad argument that 42 U.S.C. § 902(a)(3)'s removal provision divests the Commissioner of all authority under the Social Security Act or renders *all* of the Commissioner's actions "presumptively inaccurate."  (*See* Doc. 15 at 23-27).  Rather, like the offending provision in *Seila Law*, the Undersigned finds that 42 U.S.C. § 902(a)(3) can be severed from the remainder of the Act because the SSA can continue to fully function without the presence of the allegedly unconstitutional provision.  *See Seila L. LLC*, 140 S. Ct. at 2209; *see also Tibbetts v. Comm'r of Soc. Sec.*, No. 2:20-cv-872-SPC-MRM, 2021 WL 6297530, at *5 (M.D. Fla. Dec. 21, 2021), *report and recommendation adopted,* 2022 WL 61217 (M.D. Fla. Jan. 6, 2022) (citations omitted) (finding that remand based on the allegedly unconstitutional nature of 42 U.S.C. § 902(a)(3) is unwarranted based, in part, on the provision's severability from the remainder of the Act).  Thus, the Undersigned finds that remand for a rehearing on this issue is not warranted.

Moreover, while the *Collins* Court recognized the potential that an unconstitutional removal provision could "inflict compensable harm," Plaintiff here has not identified how the removal provision at issue caused her compensable harm. *See Collins*, 141 S. Ct. at 1788-89.  The Undersigned has not found any evidence suggesting that there is a connection between the removal provision and any possible harm to Plaintiff.  In addition, Plaintiff's claim was adjudicated by an ALJ whose

tenure was ratified by former Acting Commissioner Berryhill.  Because former

Acting Commissioner Berryhill was not subject to 42 U.S.C. § 902(a)(3)'s tenure

protection, any argument that a nexus exists between § 902(a)(3) and a compensable

harm to Plaintiff is further strained.

Furthermore, while the United States Supreme Court has not addressed this

issue directly, Justice Kagan forecasted its outcome in *Collins*:

> [T]he majority's approach should help protect agency
> decisions that would never have risen to the President's
> notice.  Consider the hundreds of thousands of decisions
> that the [SSA] makes each year.  The SSA has a single head
> with for-cause removal protection; so a betting person might
> wager that the agency's removal provision is next on the
> chopping block . . . [b]ut given the majority's remedial
> analysis, I doubt the mass of SSA decisions—which would
> not concern the President at all—would need to be undone.
> That makes sense. . . .  When an agency decision would not
> capture a President's attention, his removal authority could
> not make a difference—and so no injunction should issue.

*See id.* at 1802 (Kagan, J., concurring).  Justice Kagan's reasoning supports the

Undersigned's conclusion that there is no evidence in the instant case to suggest that

a nexus exists between § 902(a)(3) and any compensable harm to Plaintiff.

For these reasons, even assuming *arguendo* that 42 U.S.C. § 902(a)(3)'s

removal provision is unconstitutional, the Undersigned finds that the removal

provision does not necessitate remand or a rehearing of Plaintiff's claim.  *See Seila L.

LLC*, 140 S. Ct. 2183; *Collins*, 141 S. Ct. 1761; *see also Tibbetts*, 2021 WL 6297530, at

*5 (holding that remand based on the allegedly unconstitutional nature of 42 U.S.C.

§ 902(a)(3) is unwarranted), *report and recommendation adopted,* 2022 WL 61217; *Perez-*

*Kocher v. Comm'r of Soc. Sec.*, No. 6:20-cv-2357-GKS-EJK, 2021 WL 6334838, at *4 (M.D. Fla. Nov. 23, 2021) (finding that the plaintiff failed to state a claim upon which relief could be granted because the plaintiff could not establish that the Acting Commissioner's unconstitutional tenure protection caused compensable harm).

### B.     Whether the ALJ Properly Assessed Plaintiff's Mental Impairments.

Plaintiff argues that the ALJ erred by failing to assess properly Plaintiff's mental impairments at step four of the sequential evaluation process. (Doc. 15 at 6-13 (citations omitted)). Specifically, Plaintiff notes that the ALJ found that Plaintiff had mild limitations in all four mental functioning areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. (*Id.* at 7 (citing Tr. at 16)). Plaintiff contends that, because the ALJ found these mild limitations at step two of the sequential analysis, he needed to assess Plaintiff's mental impairments at step four in the RFC determination. (*See id.* at 8 (citations omitted)). Plaintiff argues that the ALJ erred by failing to conduct the required step four analysis and incorporate mental limitations in the RFC. (*Id.* at 7-8 (citing Tr. at 16-21)). Moreover, Plaintiff asserts that this error was harmful because the ALJ found Plaintiff capable of performing her past relevant skilled work. (*See id.* at 8-13 (citations omitted)).

In response, the Commissioner contends that the ALJ did not err in his assessment of Plaintiff's mental impairments. (*See id.* at 13-23). To begin, the Commissioner asserts that the ALJ properly determined that Plaintiff's medically

determinable impairment of depression:  (1) "did not cause more than a minimal limitation in Plaintiff's ability to perform basic mental work activities;" and (2) was non-severe.  (*Id.* at 13-14 (citing Tr. at 16-17)).  To that end, the Commissioner argues that "the ALJ's ratings of mild in each of the four [mental] functional areas as well as the ALJ's ultimate finding that Plaintiff's mental impairments were non-severe" were supported by substantial evidence.  (*Id.* at 15).

Additionally, the Commissioner contends that the ALJ did not have to include the "mild" mental functioning limitations in the RFC because the limitations were an assessment of the severity of Plaintiff's mental impairments, not an assessment of Plaintiff's RFC.  (*See id.* at 15-16).  Moreover, the Commissioner argues that the ALJ adequately considered Plaintiff's mental impairments in the RFC determination because the ALJ considered:  (1) Plaintiff's testimony; (2) Plaintiff's medication for depression; (3) the records showing normal mental status examinations; (4) Plaintiff's lack of specialized mental health treatment; (5) the state agency psychological consultants' findings; and (6) Plaintiff's activities of daily living.  (*Id.* at 17 (citing Tr. at 18, 20-21, 43, 45-46, 51-52, 65-66, 80-81, 423, 608, 612, 726, 731, 892, 895)).  The Commissioner also points out that, during step two of the sequential evaluation, the ALJ considered additional evidence regarding: (1) Plaintiff's ability to understand instructions; (2) Plaintiff's ability to interact with others; (3) Plaintiff's mood and affect; (4) Plaintiff's ability to concentrate; and (5) Plaintiff's activities of daily living.  (*Id.* at 17-18 (citing Tr. at 16, 43, 45, 705, 708, 843, 917)).

Moreover, the Commissioner argues that the ALJ completed a satisfactory function-by-function assessment, as required by SSR 96-8p, when he provided a detailed RFC determination setting forth Plaintiff's maximum ability to perform sustained work on a regular and continuing basis. (*Id.* at 18-19 (citations omitted)). The Commissioner contends that the ALJ appropriately considered Plaintiff's subjective complaints and symptoms, the objective medical evidence of record, the evidence of treatment history, the prior administrative medical findings, and Plaintiff's own reported activities of daily living. (*Id.* at 19 (citing Tr. at 17-21, 37)). The Commissioner also asserts that the ALJ properly obtained vocational expert, ("VE"), testimony on Plaintiff's ability to do her past relevant work and was not required to include mental limitation findings in the hypothetical questions to the VE that the ALJ found unsupported by the record. (*Id.* at 20 (citations omitted)).

Finally, the Commissioner summarizes several cases within this Division in which the Court found that ALJs had properly determined that claimants did not have any mental RFC limitations despite having mild limitations in the four broad areas of mental functioning. (*Id.* at 21-22 (citing *Bryant v. Comm'r of Soc. Sec.*, No. 2:20-cv-294-JLB-NPM, 2021 WL 4067464, at *11 (M.D. Fla. July 29, 2021) ("[T]he ALJ found mild limitations in all four functional areas[, but] did not err in failing to include [functional] limitations in the RFC related to [the plaintiff's] depression, anxiety, bipolar disorder, or insomnia."), *report and recommendation adopted*, 2021 WL 3855941 (M.D. Fla. Aug. 30, 2021); *Medwit v. Comm'r of Soc. Sec.*, No. 2:20-cv-143-JLB-NPM, 2021 WL 1341390, at *5 (M.D. Fla. Feb. 22, 2021) ("Since the ALJ only

assessed 'mild' limitations in the four areas of mental functioning, the ALJ did not

err by not providing a mental RFC."), *report and recommendation adopted*, 2021 WL

1138179 (M.D. Fla. Mar. 25, 2021); *Bianco v. Comm'r of Soc. Sec.*, No. 2:18-cv-570-

FtM-NPM, 2019 WL 4727812, at *7 (M.D. Fla. Sept. 27, 2019) (finding that an

ALJ's RFC determination, which includes no mental functional limitations, is

supported by substantial evidence despite the ALJ's findings of "mild" limitations in

the paragraph B criteria); *Wolfe v. Colvin*, No. 8:12-cv-903-T-TGW, 2013 WL

3285358, at *6 (M.D. Fla. June 27, 2013) (same))).  In sum, the Commissioner

asserts that the ALJ's RFC determination, which does not include mental functional

limitations, is supported by substantial evidence.  (*See id.* at 22-23).

　　　Where a claimant has a "colorable claim of mental impairment," the ALJ

must complete a Psychiatric Review Technique Form, ("PRTF").  *Moore v. Barnhart*,

405 F.3d 1208, 1213 (11th Cir. 2005).  In completing the PRTF, the ALJ must

evaluate how a claimant's mental impairment impacts four broad functional areas,

(the "paragraph B criteria"):  "Understand, remember, or apply information; interact

with others; concentrate, persist, or maintain pace; and adapt or manage oneself."

20 C.F.R. § 404.1520a(c)(3).  The ALJ will rate the degree of limitation in each of

these areas using the following five-point scale:  "None, mild, moderate, marked,

and extreme."  20 C.F.R. § 404.1520a(c)(4).  If the ALJ finds the degree of limitation

in each of the functional areas as "none" or "mild," then the ALJ will generally

conclude that the mental impairment is not severe and causes no more than a

minimal limitation in the claimant's ability to do basic work activities.  20 C.F.R. § 404.1520a(d)(1).

The limitations identified in the paragraph B criteria are used to rate the severity of mental impairments at step two and step three of the sequential evaluation process for the purpose of determining whether mental impairments are severe.  *See* 20 C.F.R. § 404.1520a.  The evaluation of the paragraph B criteria is not a determination of the claimant's mental residual functional capacity, as that determination "requires a more detailed assessment."  *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1269 (11th Cir. 2019).

A claimant's RFC reflects what the claimant can still do in a work setting despite her impairments.  20 C.F.R. § 404.1545(a).  It consists of a claimant's "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what [a claimant] can do in a work setting."  20 C.F.R. § 404.1545(a).  An ALJ will "assess and make a finding about [the claimant's RFC] based on all the relevant medical and other evidence."  20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), (3).  Put differently, the ALJ must consider all of a claimant's medically determinable impairments, including those that are non-severe.  20 C.F.R. § 404.1545(a)(2); *Schink*, 935 F.3d at 1268.  "The ALJ makes this determination by considering a claimant's physical, mental, and other abilities affected by the impairment."  *Schink*, 935 F.3d at 1268 (citing 20 C.F.R. § 404.1545(b)-(d)).  If a claimant has a limited ability to carry out certain mental actions, such limitations may reduce a claimant's ability to do work.  *Id.*  "If an ALJ

fails to address the degree of impairment caused by the combination of physical and mental medical problems, the decision that the claimant is not disabled cannot be upheld." *Id.* at 1269 (citation omitted).

Here, the Undersigned is not persuaded that the ALJ erred by failing to include mental limitations in the RFC.

At step two of the sequential evaluation, the ALJ found that Plaintiff's medically determinable mental impairment of depression was non-severe as it "did not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities." (Tr. at 16). In reaching this conclusion, the ALJ found "mild" limitations in all four of the paragraph B criteria. (*Id.*). Despite finding mild limitations at step two, the ALJ did not include any mental limitations in the RFC. (*Id.* at 17).

Plaintiff argues that the failure to include mental functional limitations in the RFC constituted error as the "mild" limitations in the paragraph B criteria required the ALJ to include mental limitations in the RFC. (*See* Doc. 15 at 6-13). The Undersigned disagrees. Rather, it appears that Plaintiff conflates (1) limitations in the paragraph B criteria, *see* 20 C.F.R. § 404.1520a, with (2) limitations in a claimant's RFC, *see* 20 C.F.R. § 404.1545. The limitations in the paragraph B criteria help the ALJ determine the severity of a claimant's mental impairments or whether a claimant meets a listing, while limitations in the RFC help the ALJ determine the level of work that a claimant is capable of engaging in. *Compare* 20 C.F.R. § 404.1520a, *with* 20 C.F.R. § 404.1545. Plaintiff has provided no authority

suggesting that the two are the same or that an ALJ is required to include mental limitations in the RFC on finding "mild" limitations in the paragraph B criteria.

To the contrary, the persuasive precedent demonstrates that ALJs are not obligated to include mental limitations in the RFC even when they find "mild" limitations while completing a PRTF. *See Williams v. Soc. Sec. Admin.*, 661 F. App'x 977, 979-80 (11th Cir. 2016) (finding that the ALJ did not err by failing to include limitations in the RFC related to the plaintiff's non-severe mental impairment when the ALJ found that the plaintiff had only "mild" limitations in the paragraph B criteria); *Sprague v. Colvin*, No. 8:13-cv-576-T-TGW, 2014 WL 2579629, at *6 (M.D. Fla. June 9, 2014) ("[T]he plaintiff's assertion that the 'mild' findings meant he had some mental functional limitation is unpersuasive."); *Eutsay v. Kijakazi*, No. 21-21164-CV, 2022 WL 1609088, at *9 (S.D. Fla. May 4, 2022) (finding that the ALJ was not required to include mental RFC limitations despite finding "mild" limitations in the paragraph B criteria), *report and recommendation adopted*, 2022 WL 1605318 (S.D. Fla. May 20, 2022); *Bryant*, 2021 WL 4067464, at *11 (same), *report and recommendation adopted*, 2021 WL 3855941.

Plaintiff also identified no relevant evidence that she contends the ALJ failed to address in the RFC determination.  Thus, Plaintiff fails to meet her burden to prove that her mental impairments, whether severe or not severe, would have caused additional limitations in her ability to work or prevented her from performing her past relevant work. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

Moreover, upon a review of the ALJ's decision, the Undersigned finds that substantial evidence supports the ALJ's determination that Plaintiff's mental health impairments did not cause any work-related RFC limitations.  For example, during the RFC assessment, the ALJ considered Plaintiff's own testimony, in which she stated that she (1) takes medication for her depression, (2) became depressed when she could no longer work, (3) has problems with concentration, and (4) has issues interacting with others.  (Tr. at 18).  The ALJ also considered and found persuasive the State agency consultants' opinions that Plaintiff's mental impairment was non-severe and she only exhibited mild limitations in the paragraph B criteria.  (*Id.* at 20 (citing Tr. at 65-66, 79-80)).  The ALJ found that Plaintiff did have the impairment of depression; however, the ALJ also noted that it was not sufficiently severe "as to preclude past relevant work activity."  (*Id.*).  The ALJ based this finding on several factors:  (1) Plaintiff lacked any specialized treatment from a psychiatrist or mental health specialist; (2) Plaintiff was currently taking medications to control her depression diagnosis from a primary care physician; (3) Plaintiff exhibited normal mental status findings; and (4) Plaintiff was capable of engaging in activities of daily living that included being capable of taking a trip to Europe.  (*Id.* at 21).

Further, upon an independent review of the record, the Undersigned finds that the ALJ appropriately addressed all the evidence regarding Plaintiff's depression.  (*See* Tr. at 33, 45, 51-52, 419 ("[Plaintiff] also has depression – on Effexor."), 423 ("Depression – on Effexor with good results."), 453 (noting a past diagnosis of depression, but providing no other information), 629 (a review of systems noting that


Plaintiff was negative for anxiety and depression), 653 (a review of systems noting that Plaintiff was positive for depression), 694 (same), 731 (stating that "[Plaintiff] also has a history of depression for which she takes Effexor and reports she would like to get off of it" and noting that Plaintiff was negative for depression), 843 (noting that Plaintiff was negative for depression), 892 (same), 916 (same)).

The Undersigned notes that Plaintiff's argument, (Doc. 15 at 6-13), is nearly identical to the argument asserted by the plaintiff in *Tibbetts v. Comm'r of Soc. Sec.*, No. 2:20-cv-872-SPC-MRM, Doc. 19 at 14-20, (M.D. Fla. Oct. 13, 2021). In *Tibbetts*, the Court found that the ALJ erred in his assessment of the plaintiff's mental impairments because he failed to discuss the evidence related to the plaintiff's mental impairments in his RFC determination. *Tibbetts v. Comm'r of Soc. Sec.*, 2021 WL 6297530, at *15 (M.D. Fla. Dec. 21, 2021), *report and recommendation adopted*, 2022 WL 61217 (M.D. Fla. Jan. 6, 2022). However, the instant case is distinguishable because, as discussed above, the ALJ thoroughly assessed all the mental evidence of record in determining Plaintiff's RFC. (*See* Tr. at 17-21).

Because the ALJ properly determined the severity of the Plaintiff's mental impairments and nothing in the record supports Plaintiff's allegations that her mental conditions limited her ability to perform work related activities, the ALJ's decision is supported by substantial evidence. Thus, the Undersigned finds that the ALJ did not err in determining Plaintiff's RFC. Accordingly, the Undersigned recommends that the ALJ's decision be affirmed as to this issue.

## VI.      Conclusion

Upon consideration of the parties' submissions and the administrative record, the Undersigned finds that the ALJ's RFC determination is supported by substantial evidence and the ALJ did not err by failing to include mental limitations in the RFC. Accordingly, the Undersigned **RESPECTFULLY RECOMMENDS** that:

1. The decision of the Commissioner be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

2. The Clerk of Court be directed to enter judgment accordingly, to terminate any pending motions and deadlines, and to close the case.

**RESPECTFULLY RECOMMENDED** in Chambers in Tampa, Florida on August 2, 2022.

Mac R. McCoy
United States Magistrate Judge

## <u>NOTICE TO PARTIES</u>

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Copies furnished to:

Counsel of Record
Unrepresented Parties